UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DARYL R. HEBERT, | § | |
| | § | |
| v. | § | CIVIL NO. 4:18-CV-910-SDJ |
| | § | |
| UNUM GROUP d/b/a UNUM GROUP | § | |
| CORPORATION, ET AL. | § | |

**MEMORANDUM ADOPTING REPORT AND
RECOMMENDATION OF UNITED STATES
MAGISTRATE JUDGE**

Came on for consideration the Report and Recommendation of the United States Magistrate Judge (the "Report"), this matter having been referred to the magistrate judge per 28 U.S.C. § 636. On June 3, 2020, the magistrate judge entered proposed findings of fact and recommendations contained in the Report. (Dkt. #124). The Report recommends that the Court grant the Motion for Summary Judgment ("Motion"), (Dkt. #55 (sealed); Dkt. #118 (redacted)), filed by Defendants Unum Group d/b/a Unum Group Corporation ("Unum"), Jeff Montag, Marcus Veazey, Matthew McWilliams, Renee Wills, Tammy Weatherman, Kelly Preisz, and Liz Putnam (collectively, "Defendants").

Plaintiff Daryl R. Hebert filed objections to the Report ("Objections"), (Dkt. #100), and Defendants responded to his Objections, (Dkt. #104). The Court has reviewed Hebert's Objections *de novo* and is of the opinion that the findings and conclusions of the magistrate judge are correct and should be adopted by this Court, and that Hebert's Objections should be overruled.

## I. BACKGROUND

The background of this case is set out in further detail by the magistrate judge in the Report and is not reproduced here in its entirety. This suit arises out of Unum's termination of Hebert's employment after Unum investigated allegations of misconduct asserted against Hebert by Defendant Renee Wills. (Dkt. #42). Hebert, a sixty-three-year-old male, was employed by Unum as a Managing Director in Unum's Dallas office. (Dkt. #119-2 at 82). At the time of his termination, Hebert was the oldest Managing Director employed by Unum. (Dkt. #49 at 3).

In November 2016, Unum received an anonymous complaint alleging a hostile work environment in the Unum Dallas office consisting of separate meetings for men and women, employees being forced to visit strip clubs, and use of crude language in the office. (Dkt. #120-3 at 113). When Unum Human Resources ("HR") conducted a "pulse check" in response to this anonymous complaint, no one in the Dallas office reported any inappropriate conduct. (Dkt. #120-3 at 115). However, a Unum HR employee testified that she described the Dallas office as her "problem child" because the employees would "clam up" anytime she inquired about complaints. (Dkt. #121-1 at 76).

On May 19, 2017, Hebert's direct superior, Defendant Jeff Montag, issued Hebert a formal reprimand (the "Reprimand") for Hebert's failure to appropriately address an employee's HR complaint. (Dkt. #120-4 at 116). The employee in question, one of the individual Defendants in this case, had reported to her supervisor that another Unum employee had sexually harassed her. (Dkt. #120-2 at 110). When a

manager informed Hebert of the employee's complaint, Hebert called the individual Defendant into his office and asked her to repeat the allegations to him—instead of reporting the complaint to HR in accordance with Unum policy. (Dkt. #120-4 at 15; Dkt. #120-2 at 110). The employee told Hebert she did not feel comfortable talking to him about the incident. (Dkt. #120-2 at 110). Hebert still did not report the individual Defendant's complaint to anyone in HR and thus Unum did not learn of it until her exit interview. (Dkt. #121-1 at 18). Following this interview, Unum issued Hebert the Reprimand. (Dkt. #120-4 at 116). The Reprimand notified Hebert that "any further instances of unacceptable behavior . . . will not be tolerated and may result in your immediate termination." (Dkt. #120-4 at 116).

During the last few years of Hebert's employment at Unum, Hebert and another employee, Wills (a Senior Account Executive who reported directly to Hebert), maintained a contentious working relationship. Hebert lodged various complaints with Unum HR regarding Wills's "independent" work style, and Hebert told Montag that Wills was "a cancer in the Dallas office" and asked for her to work from home or the Houston office. (Dkt. #120-4 at 99–101; Dkt. #120-5 ¶ 52).

In 2015, Wills requested a meeting with Hebert to discuss her concerns about Hebert's "drinking" and "frequenting of strip clubs" with employees and brokers, but Hebert dismissed her concerns. (Dkt. #120-5 ¶ 33; Dkt. #119-2 at 49). After this meeting, Wills alleges her work environment "got beyond hostile," and Wills told Montag in February 2017 that the treatment she received from Hebert had "been almost unbearable." (Dkt. #119-2 at 49; Dkt. #120-3 at 117). When Unum HR

attempted to discuss any concerns with Wills, Wills was not forthcoming with information and said that she would just "live with it" so as not to jeopardize her job. (Dkt. #120-4 at 118).

On January 19, 2018, Hebert, Wills, and other Dallas Unum employees were present for a meeting regarding one of Unum's brokers. (Dkt. #120-3 at 69–72). During this meeting, Montag announced that this broker was being moved to the Houston Unum office, which would result in lost commissions for the Dallas office. (Dkt. #120-3 at 71–72). Defendants allege that Hebert implied to those present at the meeting that Wills caused the Dallas office to lose this broker. (Dkt. #120-3 at 71).

On January 23, 2018, four days after the meeting, Wills emailed Unum HR her complaint regarding Hebert ("Wills's Complaint"). (Dkt. #119-2 at 47). In Wills's Complaint, Wills alleged that she had tried for several years to keep her head down and do her job, but her daily work environment continued to deteriorate. (Dkt. #119-2 at 47). Wills's Complaint asserted numerous allegations, including: (1) Hebert brought strippers to a Unum event in 2013; (2) Hebert tried to trick Wills into going to strip clubs with him and other Unum employees; (3) Hebert forced one of the named individual Defendants, a then-employee in the Dallas Unum office, to get a lap dance at a strip club in front of a broker; (4) Hebert used sexual innuendos and vulgar language in the work place; and (5) Hebert instructed Unum employees to submit matching-contribution forms for donations made with their corporate credit cards for a charity event, in violation of Unum's matching-gift policy. (Dkt. #119-2 at 47–53).

4

Upon receipt of Wills's Complaint, Unum HR investigated the allegations. Defendants Marcus Veazey and Matthew McWilliams conducted the investigation by reviewing documents and interviewing twenty-five Unum employees and three former Unum employees. (Dkt. #121-1 at 31; Dkt. #119-2 at 2)). Through these interviews, McWilliams and Veazey found that: (1) numerous Unum employees and Unum brokers had frequented strip clubs with Hebert; (2) Hebert had referred to a Unum employee as "FLP," which stood for "[F'ing] Little Princess"; (3) Hebert and other Unum employees and brokers engaged in frequent happy hours involving excessive drinking and inappropriate office conduct; and (4) Hebert's assistant submitted matching-contribution forms on behalf of Hebert, as well as other Unum employees without their knowledge, for donations made to a charity in violation of Unum's matching-gift policy. (Dkt. #119-2 at 2–12).

During his interview with McWilliams and Veazey, Hebert denied bringing strippers to a Unum event but admitted to giving an event ticket to a bartender who worked at a strip club he frequented. (Dkt. #119 at 61–62). Hebert further admitted that he visited strip clubs with Unum employees and brokers but denied forcing an individual Defendant to get a lap dance in front of a broker. (Dkt. #119 at 60–61). Hebert admitted that employees in the Dallas Unum office attended informal happy hours once or twice a week. (Dkt. #119 at 65–66). Further, Hebert admitted that he used the "F word" occasionally in the office and had referred to a Unum employee as an "FLP" and knew what it stood for. (Dkt. #119 at 63, 67). Hebert also admitted that

5

he had conducted male- and female-only meetings in the Dallas office for a brief period before a Unum HR employee directed him to stop. (Dkt. #119-2 at 7).

After their interview with Hebert on February 21, 2018, McWilliams and Veazey informed Hebert of his immediate suspension pending the conclusion of their investigation. (Dkt. #119 at 69). That same day, Hebert's attorney emailed Montag regarding Hebert's suspension, stating Hebert's belief that he would soon be terminated and that some of the grounds for Hebert's suspension were based on "such high or double standards that no reasonable male employee of any company could ever be in compliance with them." (Dkt. #119-2 at 31). Hebert's attorney threatened to file a charge of gender discrimination with the Equal Employment Opportunity Commission if Unum did not allow Hebert to return to work immediately. (Dkt. #119-2 at 31).

Unum did not allow Hebert to return to work and ultimately terminated Hebert's employment twelve days later. (Dkt. #119-2 at 85–86). Montag and his direct supervisor, Chris Pyne, made the ultimate decision to terminate Hebert after McWilliams and Veazey relayed the findings of the investigation. (Dkt. #119-1 at 6–7, Dkt. #119-2 at 22).

Hebert filed this suit on December 31, 2018, asserting claims against Unum for: (1) sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); and (3) retaliation in violation of Title VII. (Dkt. #42). Additionally, Hebert asserted claims against Defendants Montag, Veazey,

6

McWilliams, Wills, Tammy Weatherman, Kelly Preisz, and Liz Putnam (collectively, the "Individual Defendants") for defamation, tortious interference, and civil conspiracy. (Dkt #42).

Defendants filed the Motion on November 12, 2019. (Dkt. #55). On April 26, 2020, the magistrate judge held a hearing on the Motion (the "Hearing"). (Dkt. #94). Following the Hearing, the magistrate judge provided this Court with the Report, recommending that Defendants' Motion be granted as to Hebert's federal claims and that Hebert's remaining state claims against the Individual Defendants be dismissed without prejudice to refiling in state court. (Dkt. #124).

## II. DISCUSSION

Hebert's Objections reassert the same arguments addressed by the magistrate judge in her Report. Hebert objects that the Report erred and summary judgment should be denied because Defendants did not meet their summary judgment burden and because the magistrate judge made a number of legal errors in the Report. Hebert lists those legal errors as follows: (1) the Report ignores law as to sexual stereotypes; (2) the Report misstates Hebert's *prima facie* burden; (3) the Report employs incomplete "cat's paw" analysis; (4) the Report misrepresents Hebert's evidence of sex bias; (5) the Report misrepresents Defendants' evidence of legitimate, nondiscriminatory reasons for Hebert's termination; (6) the Report misrepresents Hebert's evidence of pretext; (7) the Report misrepresents Hebert's cat's paw evidence; and (8) the Report misrepresents Hebert's evidence of age bias. (Dkt. #100).

At the outset, Hebert generally objects to the Report on the basis that Defendants did not meet their summary judgment burden as required by Federal Rule of Civil Procedure 56. A party objecting to the proposed findings and recommendations of a magistrate judge must "file *specific* written objections." FED. R. CIV. P. 72(b)(2) (emphasis added). "[T]he district court need not consider frivolous, conclusive, or general objections." *Matlock v. Kennedy*, No. 6:19-CV-276, 2020 WL 4237374, at *2 (E.D. Tex. June 22, 2020) (citing *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)). Hebert has provided the Court with no basis for this objection beyond his general statement that Defendants failed to meet their summary judgment burden. As such, Hebert's general objection is **OVERRULED**.

In Hebert's first specific objection, he contends that the Report ignores established law regarding sex stereotypes. According to Hebert, he was the victim of a sex stereotype and that the magistrate judge "dismiss[ed] this claim through misdirection to theories not advocated by Hebert." (Dkt. #100 at 2). Hebert points to his response to the Motion, in which he cited *Sassaman v. Gamache* for the proposition that "[t]he presumption a male employee likely committed sexual harassment of which he has been accused is an invidious sex stereotype." (Dkt. #120 at 32 (citing *Sassaman v. Gamache*, 566 F.3d 307 (2d Cir. 2009))). Contrary to Hebert's assertion, the Report discusses Hebert's allegation that his employment was terminated due to a sex stereotype both in the context of Hebert's *prima facie* case and Hebert's "cat's paw" argument.[1] (Dkt. #124 at 31–32, 41–42). In addressing this

---

[1] Under a cat's paw theory of discrimination, "a subordinate employee's discriminatory

8

allegation, the magistrate judge found that the stereotype that any male accused of sexual harassment is guilty could not have led to Unum's decision to terminate Hebert because Hebert admitted to many of the accusations made against him.[2] (Dkt. #124 at 42). Moreover, the magistrate judge found that at least one of Unum's proffered reasons for termination—Hebert's violation of Unum's matching-gift policy—was wholly independent of gender. (Dkt. #124 at 39–40). Thus, the Court finds that the Report properly addressed Hebert's claim that he was fired due to this sex stereotype. Accordingly, Hebert's first objection is **OVERRULED**.

Second, Hebert objects that the Report incorrectly states Hebert's *prima facie* burden under *McDonnell Douglas*. (Dkt. #100 at 2–3); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This objection is also meritless. The Report quotes and applies binding Fifth Circuit precedent setting forth a plaintiff's *prima facie* burden in Title VII employment-discrimination cases. (Dkt. #124 at 28 ("In order to establish a *prima facie* case of discrimination, the plaintiff must show: (1) he is a member of a protected group; (2) he was qualified for the position; (3) an adverse employment action occurred; and (4) he was treated less

---

remarks regarding a co-worker can be attributed to the workplace superior, ultimately the one in charge of making employment decisions, when it is shown that the subordinate influenced the superior's decision or thought process." *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 366 n.11 (5th Cir. 2013) (citing *Staub v. Proctor Hosp.*, 562 U.S. 411, 421, 131 S.Ct. 1186, 179 L.Ed.2d 144 (2011)).

[2] The Second Circuit in *Sassaman*—the case on which Hebert heavily relies—held that the plaintiff had provided sufficient evidence that this stereotype drove his employer's termination decision, and thus the plaintiff had established a *prima facie* case. *See Sassaman*, 566 F.3d at 315. Here, the Report ultimately assumed, without deciding, that Hebert met his *prima facie* burden. *See* (Dkt. #124 at 32).

favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.") (collecting Fifth Circuit cases)). The Report also cites Supreme Court precedent using identical language to that used in Hebert's Objections to describe the fourth element of a plaintiff's *prima facie* case. *Compare* (Dkt. #124 at 31 ("The Supreme Court has stated that the fourth element of a *prima facie* case can be established by showing 'circumstances which give rise to an inference of unlawful discrimination.'") (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981))) *with* (Dkt. #100 at 3 (quoting *Anderson v. Harrison Cty*, 639 F. App'x 1010, 1014 (5th Cir. 2016) (quoting the same language from *Burdine*))). Further, the magistrate judge assumed without deciding that Hebert *had* met his *prima facie* burden. (Dkt. #100 at 32). Thus, Hebert's second objection is **OVERRULED**.

Third, Hebert objects that the Report analyzes only the cat's paw theory as a means of showing pretext instead of also considering the cat's paw theory as a mixed-motive theory of discrimination. (Dkt. #100 at 3). Specifically, Hebert argues that the magistrate judge failed to analyze his cat's paw argument as a standalone "test for proving bias" under *Staub v. Proctor Hospital.* (Dkt. #100 at 3 (citing *Staub v. Proctor Hosp.*, 562 U.S. 411, 422, 131 S.Ct. 1186, 179 L.Ed.2d 144 (2011))). The Supreme Court in *Staub* held that "if a supervisor performs an act motivated by [discriminatory] animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment

10

action, then the employer is liable" for discrimination. *Staub*, 562 U.S. at 422 (emphasis omitted). The Report analyzes Hebert's cat's paw arguments under the test established in *Staub* and refers to the *Staub* opinion extensively. (Dkt. #124 at 37–43). Thus, the Court finds that the magistrate judge completely analyzed Hebert's cat's paw arguments and Hebert's third objection is **OVERRULED**.

Fourth, Hebert objects that the Report ignores evidence establishing a genuine issue of material fact as to whether Hebert's employment was terminated because of a stereotype regarding his gender. (Dkt. #100 at 3–5). In support of this argument, Hebert lists multiple facts he alleges the magistrate judge ignored that establish a genuine issue of material fact as to whether Hebert was fired based upon a sex stereotype. (Dkt. #100 at 3–5). However, the majority of the information Hebert lists was discussed in the Report. (Dkt. #124 at 2–26). Further, Hebert's objection merely lists miscellaneous allegations without providing any argument or analysis as to how such information establishes a genuine issue of material fact. (Dkt. #100 at 3–5). As noted above, objections to the Report must be specific, and the Court need not consider frivolous, conclusive, or general objections. *See* FED. R. CIV. P. 72(b)(2); *Matlock*, 2020 WL 4237374, at *2. Because Hebert fails to provide the Court with any argument or analysis supporting this objection, it is inherently conclusory. Additionally, Hebert's objection constitutes no more than a recitation of the allegations and arguments already asserted in Hebert's response to the Motion and presented at the Hearing. Thus, Hebert's fourth objection is **OVERRULED**.

Fifth, Hebert objects that the Report misrepresents Unum's alleged legitimate, nondiscriminatory reasons for terminating Hebert's employment. (Dkt. #100 at 5). Specifically, Hebert maintains that the Report either cites to evidence that Defendants never presented or too generously "provides clarity" to Defendants evidence of Unum's legitimate, nondiscriminatory reasons for Hebert's termination. (Dkt. #100 at 5). Hebert's objection is unavailing. In both his response to the Motion and his Objections, Hebert attempts to reframe Unum's legitimate, nondiscriminatory reasons for terminating his employment. (Dkt. #120 at 36–39; Dkt. #100 at 5). The Report analyzes the legitimate, nondiscriminatory reasons for Hebert's termination proffered in Defendants' briefing and at the Hearing: that (1) Hebert attended strip clubs with his subordinate employees and Unum brokers; (2) Hebert used vulgar language and sexual innuendos at the workplace and at Unum events; (3) Hebert violated Unum's policy for matching charitable gifts; and (4) Hebert had already been reprimanded for failing to follow Unum's sexual harassment reporting policy. (Dkt. #55 at 32; Dkt. #121 at 7–10; Dkt. #124 at 32).

The Report relies on evidence presented and arguments made in Defendants' briefing in support of the Motion, as well as arguments asserted at the Hearing. (Dkt. #124). Specifically, during the hearing, Defendants argued and presented evidence, such as Hebert's termination letter and Montag's and Pyne's deposition testimony, that Hebert was terminated for a variety of reasons, including attending strip clubs with Unum employees and brokers and using vulgar language, such as the "F word," in corporate settings. (Dkt. #94, #119–119-2, #121-1). Thus, Hebert's

12

argument that Defendants "never presented" this evidence is inaccurate. Additionally, Defendants specifically argued in the Motion and in Defendants' reply, and clarified such argument at the Hearing, that Unum also terminated Hebert for violating Unum's matching-gift policy (and that Hebert's donation of $9,000 to charity on a completely separate occasion subsequent to the event in question was a red herring). (Dkt. #55, #121, #94). As such, the Defendants properly presented the "clarification" of this argument to the magistrate judge and the Court. Lastly, Defendants argued in their reply and at the Hearing that Unum also terminated Hebert due to his prior Reprimand for failing to follow Unum's sexual harassment policy. (Dkt. #121 at 10; Dkt. #94). Thus, Hebert's objection that Defendants never provided this "context" to the Court is also inaccurate. Therefore, the Court finds that the Report did not misrepresent Unum's evidence of its legitimate, nondiscriminatory reasons for Hebert's termination, and Hebert's fifth objection is **OVERRULED**.

Sixth, Hebert objects that the Report misrepresents Hebert's evidence of pretext in support of Hebert's Title VII claim. (Dkt. #100 at 6–7). Specifically, Hebert repeats the argument from his response to the Motion that a genuine issue of material fact exists as to whether Unum's proffered reasons for Hebert's termination were its real reasons. (Dkt. #100 at 6; Dkt. #120 at 36–39). Hebert contends that the Report misrepresented his evidence in favor of this argument as being nothing more than a challenge to the facts underlying Unum's decision. (Dkt. #100 at 6).

This objection also fails. In the Report, the magistrate judge found that Hebert failed to establish a genuine issue of material fact as to whether any of Unum's

13

proffered reasons for Hebert's termination were pretextual. (Dkt. #124 at 33–37). In doing so, the magistrate judge extensively addressed each of the arguments that Hebert now reargues in his Objections and found that Hebert admitted to the facts underlying two of Unum's legitimate, nondiscriminatory reasons for his termination—that Hebert attended strip clubs with subordinates and Unum brokers and used the "F word" in the office and as part of a derogatory nickname for an employee. (Dkt. #124 at 33– 36). The Report further found that Hebert's pretext arguments largely centered around disputing the underlying facts of Unum's investigation that led to his termination. (Dkt. #124 at 33–36). Similarly, Hebert's arguments in his Objections concern what information should have been provided to Montag and Pyne during the investigation. (Dkt. #100 at 6). As stated in the Report, "[s]imply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007). Because the Court finds that the Report did not misrepresent Hebert's evidence and because the magistrate judge correctly found that Hebert failed to establish a genuine issue of material fact as to whether Unum's proffered reasons for terminating Hebert's employment were pretextual, Hebert's sixth objection is **OVERRULED**.

Seventh, Hebert objects that the Report misrepresents Hebert's evidence establishing his cat's paw theory of discrimination. (Dkt. #100 at 7). Specifically, Hebert broadly states that his Objections outline "substantial evidence ignored by the Report showing a sexually biased investigation by McWilliams and Veazey."

14

(Dkt. #100 at 7). However, Hebert fails to identify any specific information supporting this argument and fails to explain how such information supports a finding that Unum's investigation was "sexually biased." As stated above, the magistrate judge previously considered the vast majority of the information Hebert lists in his Objections, and the Report concluded that Hebert's evidence did not establish a genuine issue of material fact as to whether McWilliams and Veazey acted as "cat's paws" for Unum. (Dkt. #124 at 41–43). Further, as previously noted, a list of information without any analysis is not a proper objection to be considered by the Court. *See* FED. R. CIV. P. 72(b)(2); *Matlock*, 2020 WL 4237374, at *2.

Hebert next repeats his argument that Wills "lodged a false complaint of sexual harassment," and objects that the Report ignores this allegation. (Dkt. #100 at 7). In the Report, the magistrate judge notes that the case Hebert cites in support, *Menaker*, states that "[i]f allegations would have been leveled regardless of the plaintiff's sex, no sex discrimination has occurred." (Dkt. #124 at 39 (quoting *Menaker v. Hofstra Univ.*, 935 F.3d 20, 38 n.88 (2d Cir. 2019))). The magistrate judge found that all Wills's allegations against Hebert could be leveled regardless of gender. (Dkt. #124 at 39–40). Further, the magistrate judge found that Hebert admitted to many of the allegations asserted in Wills's Complaint. (Dkt. #124 at 41). Thus, the Court finds that the Report properly analyzed Hebert's arguments and evidence in favor of his cat's paw theory as to Wills.

Hebert also objects that the Report misrepresents what Hebert admitted during Unum's investigation. However, the Report does not state that Hebert

15

admitted to any of the conduct he complains of in his Objections. First, the Report notes that Hebert admitted to attending strip clubs with employees and brokers, but it never states that he admitted to forcing an employee to receive a lap dance. (Dkt. #124 at 15). Second, the Report notes that Hebert admitted to calling a subordinate an "FLP," meaning "[F'ing] Little Princess," and to using the "F word" in the corporate setting, but the Report does not mention any other specific vulgar language used by Hebert. (Dkt. #124 at 17). The Report also never claims that Hebert outright admitted to violating Unum's gift policy or to violating the terms of his Reprimand. Thus, Hebert's seventh objection is **OVERRULED**.

Eighth, Hebert objects that the Report misrepresents the evidence in support of Hebert's age discrimination claim. (Dkt. #100 at 7–8). Specifically, citing the same reasons articulated regarding Hebert's Title VII claim, Hebert objects that the Report misrepresents both Unum's evidence of its legitimate, nondiscriminatory reasons for Hebert's termination and Hebert's evidence of pretext. As stated above, the Court finds that the magistrate judge did not misrepresent the evidence before the Court, and thus Hebert's objection on this ground is equally unavailing for both Hebert's Title VII and ADEA claims.

Additionally, Hebert objects that the Report incorrectly found that Montag's remarks to Hebert regarding his need to be more "contemporary" were not probative of age bias. (Dkt. #100 at 8). In the Report, the magistrate judge analyzed the context in which Montag said this to Hebert—praising Hebert in his performance review and stating that Hebert's recent actions were "an example of the contemporary leadership

I need to see from you"—and found Montag's comment lacked discriminatory animus. (Dkt. #124 at 46). The Report went on to state that even if Montag called Hebert "old school" and "not contemporary" in other contexts, age-based remarks can only be probative of discriminatory intent if they are "not the only evidence of pretext." (Dkt. #124 at 47 (quoting *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577 (5th Cir. 2003))). Upon review, the case law Hebert cites supports the magistrate judge's finding, and two of the cases were analyzed in the Report. *See Palasota*, 342 F.3d at 577–78; *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 353 (5th Cir. 2005); *see also Bienkowski v. Am Airlines, Inc.*, 851 F.2d 1503, 1507 (5th Cir. 1988). Thus, the magistrate judge correctly found that Hebert failed to provide the Court with any additional evidence of discriminatory intent and therefore failed to establish that Unum's proffered reasons for his termination were pretextual. As such, Hebert's eighth and final objection is **OVERRULED**.

### III. CONCLUSION

After *de novo* review, the Court concludes that Defendants' Motion for Summary Judgment should be granted for the reasons stated in the magistrate judge's Report.

It is, therefore, **ORDERED** that the Report and Recommendation of the United States Magistrate Judge, (Dkt. #124), should be and is hereby **ADOPTED** as the decision of this Court. Hebert's Objections to the Report, (Dkt. #100), are **OVERRULED**.

It is further **ORDERED** as follows:

As a result of adopting the Report, Defendants' Motion for Summary Judgment, (Dkt. #55 (sealed), #118 (redacted)), is **GRANTED**;

Hebert's federal claims—Count One (Title VII Sex Discrimination), Count Two (ADEA Age Discrimination), and Count Three (Title VII Retaliation)—are hereby **DISMISSED with prejudice**;

Hebert's state claims—Count Four (Defamation), Count Five (Tortious Interference with Contract), and Count Six (Conspiracy)—are **DISMISSED WITHOUT PREJUDICE** to refiling in an appropriate state court;

All relief not previously granted is **DENIED**. The Clerk is directed to **CLOSE** this civil action.

**So ORDERED and SIGNED this 30th day of September, 2020.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE